ECF Case

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCOIS MARLAND,

           Plaintiff,

–against–

MATTHEW HEYSEL, and
BIG SKY ENERGY CORPORATION,

           Defendants.

Case No.

08 CIV 3751 LAK

JUDGE KAPLAN

COMPLAINT FOR
VIOLATIONS OF
THE FEDERAL
SECURITIES LAWS

RECEIVED APR 21 2008 U.S.D.C. S.D.N.Y. CASHIERS

---

1. Plaintiffs Francois Marland ("Marland"), by and through his undersigned counsel, alleges the following against Defendant Matthew Heysel ("Heysel") and Big Sky Energy Corporation ("Big Sky"):

### Nature of the Action

2. This matter involves a securities fraud perpetrated by Defendant Heysel, acting as CEO of Defendant Big Sky, and on behalf of Big Sky. As detailed below, the Defendants have directly engaged in practices which are violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder 17 C.F.R. § 240.10b-5.

### PARTIES

3. Plaintiff Francois Marland is a French citizen living in Geneva, Switzerland.

4. Defendant Matthew Heysel has served as Chairman of the Board of Directors and Chief Executive Officer of Big Sky Energy Corporation from 2000 until May, 2005. Heysel was also Chairman of Big Sky Energy Corporation's subsidiaries Big Sky Energy Kazakhstan Ltd.

and Big Sky Energy Atyrau Ltd. Heysel currently serves as the Executive Chairman of the Board of Big Sky Energy Corporation.

5. Defendant Big Sky Energy Corporation (hereafter, "Big Sky") is a multinational corporation, incorporated in Nevada with its principal place of business located in London, United Kingdom. Big Sky also maintains offices in Alberta, Canada and Almaty, Kazakhstan.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. This Court is the proper venue for this action because certain transactions, acts, practices and courses of business have occurred in the Southern District of New York, including, but not limited to, the sales of stock in the defendant company on the NASDAQ within the Southern District of New York.

8. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## FACTS

9. Marland, directly and indirectly, began purchasing common stock of Big Sky in early 2006 off the NASDAQ exchange (ticker symbol BSKO) located within the Southern District of New York.

10. As of Jun 11th, 2006, Marland beneficially owned 250,000 shares of Big Sky, valued at $277,500.

11. On or about 11:00am, June 11th, 2006, Marland's associate, Piero Ventura, met with the Defendant at the Park Hyatt in Dubai to discuss several of Mr. Marland's concerns regarding Big Sky's performance. Mr. Ventura and the Defendant discussed Big Sky's loss of an important oil field through a purportedly unauthorized sale by a company employee, as well as the general prospects of Big Sky.

12. The Defendant told Mr. Ventura that Big Sky "had just signed an agreement with Alexander Maschkevich," whom the Defendant described as the owner, or one of the main shareholders of Eurasia Group, and as someone who was extremely well connected with high levels of government in the Kazakh region. The Defendant said that he had given Eurasia Group several million shares of Big Sky in exchange for Eurasia Group to recover the lost oil field for Big Sky, and to generally revitalize the company. The Defendant told Mr. Ventura that as a result of these new developments, Big Sky "would become a billion dollar company."

13. Citing these reasons, the Defendant told Mr. Ventura to urge Mr. Marland not to sell his shares, adding that the defendant had conveyed this information as "inside information" in advance of any public announcement.

14. Having been given what he was told was inside information, Marland's position was effectively frozen. Marland did not sell his stock, and instead continued to hold his stock in Big Sky. Instead of increasing sharply as the defendant had stated, Big Sky's stock began to decline – eventually sinking to less than $0.04/share, where it has remained.

15. Heysel's statements were materially false. Eurasia Group did not enter into a strategic partnership with Big Sky, nor did it gain any major stock interest in exchange for providing business opportunities that might have increased Big Sky's market value. Additionally, the oil field that Big Sky had lost was never recovered.

## First Cause of Action
### (Against Heysel)

16. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 15 above, as if set forth fully herein.

17. Defendant Heysel's acts, schemes and misrepresentations reflected in his false statements to Marland's agent constitute common law fraud under the law of the State of New York, or of such other state whose law would apply to this action.

18. Defendant Heysel acted intentionally, willfully, for profit, and without just cause or excuse in making his false statements to Marland's associate.

19. Heysel intended for Marland to rely upon the false statements. Marland did rely on Heysel's false statements, and Marland's reliance was reasonable.

20. As a result of Marland's reliance on Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

## Second Cause of Action
### (Against Heysel)

21. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 20 above, as if set forth fully herein.

22. Defendant Heysel has violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, transactions, practices, and courses of business which operated or would operate as a fraud or

deceit upon the purchasers of securities and upon other persons, in connection with the purchase or sale of a security.

23. Defendant Heysel knew or should have known that his statement to Ventura that Big Sky had "just signed an agreement" with Alexander Maschkevich to revitalize the company was a material misstatement. Heysel also should have known that his categorical assurance to Ventura that Big Sky would recover the lost oil field was a materially false statement that omitted any cautionary language or reservation.

24. Defendant Heysel knew or should have known, that Marland would reasonably rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks. Marland's reliance on Heysel's representations, made to Marland's business associate Piero Ventura, was reasonable under the circumstances.

25. As a result of Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

### Third Cause of Action
### (Against Big Sky)

26. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 25 above, as if set forth fully herein.

27. Big Sky's CEO Heysel's acts, schemes and misrepresentations reflected in his false statements to Marland's agent constitute common law fraud under the law of the State of New York, or of such other state whose law would apply to this action.

28. Heysel, as CEO of Defendant Big Sky, acted intentionally, willfully, for profit, and without just cause or excuse in making his false statements to Marland's associate.

29. Heysel, as CEO of Big Sky, intended for Marland to rely on his false statements. Marland did reasonably rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks. Marland's reliance on Heysel's representations, made in Heysel's capacity as CEO of Big Sky, was reasonable under the circumstances.

30. As a result of Marland's reliance on Big Sky's CEO's false statements, Marland has suffered damages in an amount to be determined at trial.

### Fourth Cause of Action
### (Against Big Sky)

31. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 29 above, as if set forth fully herein.

32. Defendant Big Sky has violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities and upon other persons, in connection with the purchase or sale of a security.

33. Defendant Big Sky's CEO Heysel knew or should have known, that his statement expressing that Big Sky had "just signed an agreement" with Alexander Maschkevich to recover the lost oil fields and revitalize the company was a material misstatement. Heysel also should

have known that his categorical assurance to Ventura that Big Sky would recover the lost oil field was a materially false statement that omitted any cautionary language or reservation.

34. Defendant Big Sky's CEO Heysel knew or should have known, that Marland would reasonably rely upon Big Sky's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks. Marland's reliance on Big Sky's representations, made through Heysel in his capacity as CEO of Big Sky, was reasonable under the circumstances.

35. As a result of Big Sky's CEO Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court:

A. Find that the Defendants Matthew Heysel and Big Sky Energy Corporation committed securities fraud and common law fraud, violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b);

B. Award compensatory damages in favor of the Plaintiff against all Defendants, jointly and severally, for all damages sustained as a result of the Defendant's wrong doing, in an amount to be proven at trial, including interest thereon;

C. Award Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, in conformity with Rule 38(b) of the Federal Rules of Civil Procedure.

New York, New York
April 21, 2008

                HAYES & MALONEY LLP

            By: _/s/ Andrew W. Hayes_
                Andrew W. Hayes (AH-2570)
                1 Rockefeller Plaza, Suite 1005
                New York, N.Y. 10020
                212-554-3120

                Attorneys for Plaintiff
                MARLAND FRANCOIS