UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FRANCOIS MARLAND,** | Case No. 08 CIV 3751 (LAK) (DCF) |
| Plaintiff, | ECF CASE |
| – against – | MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| **MATTHEW HEYSEL, and BIG SKY ENERGY CORPORATION,** | |
| Defendants. | |

### PRELIMINARY STATEMENT

Defendants' Motion to Dismiss, dated June 18th, 2008, (the "Motion") completely ignores the specific jurisdictional basis set forth in the Complaint – transactional jurisdiction, arising from the indisputable fact that the stock of Big Sky Energy Corporation ("Big Sky"), an American corporation, was, and is, traded on the NASDAQ (and only on the NASDAQ). As cases which are squarely on point hold, Matthew Heysel ("Heysel") and Big Sky are subject to jurisdiction in this Court because the clear and obvious goal of the alleged fraud was to induce Marland not to sell his stock, which was traded on a stock exchange located *in this District*. Defendants' Motion should therefore be denied.

### ARGUMENT

**I. DEFENDANTS' ARGUMENT COMPLETELY IGNORES PERTINENT JURISDICTIONAL FACTS SET FORTH IN PLAINTIFF'S COMPLAINT.**

Defendants' Memorandum of Law in Support of Defendants' Motion claims that the "Plaintiff has utterly failed to offer any factual basis for subject matter jurisdiction." *See* Motion, Page 4. Defendants repeat this argument throughout the Motion, further stating that "Plaintiff's

claims have no nexus to activity, investors, or markets within the United States." *See* Motion, Page 7.

Defendants are obviously wrong: Paragraph 5 in the "Parties" section of the complaint states that Big Sky was "incorporated in Nevada." Paragraph 7 in the "Jurisdiction and Venue" section of the complaint states that "certain acts, practices and courses of business have occurred within the Southern District of New York, including, but not limited to, the sales of stock in the Defendant Company on the NASDAQ within the Southern District of New York." Paragraph 9 in the "Facts" section of the complaint states that "Marland, directly and indirectly, began purchasing common stock of Big Sky in early 2006 off the NASDAQ exchange (ticker symbol BSKO) located within the Southern District of New York."

Defendants simply ignore these pertinent (and, indeed, indisputable) facts, though they must know that the NASDAQ is a stock exchange located in Times Square at the intersection of 43rd Street and Broadway (5 blocks south of Defendants' counsel's office).

Defendants' entire legal argument rests on this elision of the relevant jurisdiction facts, and, as a result, is fatally flawed. Defendants admit that they are relying upon "a body of case law for the exercise of subject matter jurisdiction over the claims of foreign plaintiffs regarding conduct related to *foreign securities transactions*." *See* Motion, Page 4 (emphasis added). This case, however, involves conduct related to *domestic securities transactions*, namely a Nevada corporation, Big Sky, whose stock was traded on the NASDAQ; only the Plaintiff and the situs of the fraud are foreign.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER THE SECURITIES EXCHANGE ACT BECAUSE BIG SKY IS A NEVADA CORPORATION ACTIVELY TRADED ON THE NASDAQ.

Defendants attempt to pigeon-hole this case into a line of cases dealing with foreign securities transactions, rather than domestic securities transactions. Thus *every* case which the Defendants cite in the Motion concerns a foreign corporation, a foreign exchange, or both. None of the cases which the Defendants have cited concern an American corporation whose common stock is traded on a domestic exchange. The fact pattern present here is so axiomatic to the concept of jurisdiction under the Securities Exchange Act that the Defendants could not cite a single case where the jurisdiction over a similarly situated company was even in controversy.

Defendants' emphasis on the fact that Plaintiff is a foreigner (worse, a Frenchman), and the fraudulent statements were made overseas ignores decades of controlling precedent holding that such facts are insufficient to divest the court of jurisdiction. The Second Circuit has squarely held that to refuse to extend jurisdiction over an American company for a fraudulent scheme targeting foreigners abroad would "allow the United States to be used as a base for manufacturing fraudulent security devices for export." *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1017 (2d Cir. 1975) (holding that securities laws apply to alleged fraud by domestic corporation even when the securities in question were sold only to foreigners). As the Court noted, "This country would surely look askance if one of our neighbors stood by silently and permitted misrepresented securities to be poured into the United States." *Id.*

Further, even if this Court were to apply the legal reasoning which the Defendants mistakenly rely upon, Plaintiff would still prevail. Two jurisdictional tests for applying the Securities Act to foreign securities transactions which have emerged under the Second Circuit's decisions are the "conduct test," as announced in *Leasco Data Processing Equip. Corp. v.*

3

*Maxwell,* 468 F.2d 1326, 1336-37 (2d Cir. 1972), and the "effects test," as announced in *Schoenbaum v. Firstbrook,* 405 F.2d 200, 206-09 (2d Cir.), *rev'd with respect to holding on merits,* 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied sub nom. Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747 (1969). "There is no requirement that these two tests be applied separately and distinctly from each other. Indeed, an admixture or combination of the two often gives a better picture of whether there is sufficient United States involvement to justify the exercise of jurisdiction by an American court." *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 122 (2d Cir. 1995).

Even apart from the fact that Big Sky is a Nevada corporation, courts have held that the trading of securities of foreign corporations on an American exchange to be nearly dispositive of "conduct" and "effects" within the United States.

With respect to the "conduct test," in *Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1046 (2d Cir. 1983), the Second Circuit – using transnational commodities and transnational securities transactions interchangeably – held that simply trading on a United States commodities exchange was material conduct to the completion of a fraud, and that this fact was "far weightier" than the other facts present:

> "Viewing the conduct test in this light, it is clear that the trading conducted… on United States exchanges should be weighed in determining this court's jurisdiction. Just as Congress did not want the United States to be used as a base for manufacturing fraudulent securities devices, irrespective of the nationality of the victim, *Bersch*, *supra*, neither did it want United States commodities markets to be used as a base to consummate schemes concocted abroad, particularly when the perpetrators are agents of American corporations."

*Id.* at 1046 (Citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir. 1975)

In the instant case, Heysel was the agent of an American corporation, Big Sky, who concocted a fraudulent scheme abroad making use of an American securities exchange, the NASDAQ.

4

With respect to the "effects test," in *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 547 F.Supp. 309, 313 (N.D. Ill. 1982), Judge Getzendanner found herself in a situation in which she "had to decide whether to sustain jurisdiction under the "effects test" solely on the basis that the [foreign] securities involved were traded on American exchanges." (*i.e.*, she was not dealing with an American corporation that had issued stock on an American exchange, as is the case here). Even in that case, Judge Gatzendanner held that the court had subject matter jurisdiction, holding that when the securities involved are registered on an American exchange and could be purchased by Americans, "harm can be presumed because the alleged fraud implicates the integrity of the American market."

For the reasons stated above, and others[1], there is simply no precedent for the Court to hold that it lacks subject-matter jurisdiction over the Defendants in connection with an alleged fraud involving the sale of stock in a Nevada corporation which is traded on the NASDAQ.

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

### A.    Personal Jurisdiction over Defendant Big Sky Energy Corporation

Notably, the Defendants do not dispute the existence of personal jurisdiction over Big Sky itself. This simply underscores the absurdity of their argument that disputes over the alleged manipulation of the value of its stock on the NASDAQ cannot be heard in a court where the NASDAQ itself is located.

### B.    Personal Jurisdiction over Defendant Matthew Heysel

Defendants do, however, dispute the exercise of jurisdiction over Big Sky's CEO Matthew Heysel, who is alleged to have personally made the fraudulent statements urging

---

[1] Subject matter jurisdiction could also be conferred based upon a Diversity of Jurisdiction analysis under 28 U.S.C. § 1332(a)(2) since Defendant Big Sky is a Nevada Corporation, Defendant Heysel is a citizen of Canada, Plaintiff François Marland is a citizen of France, and the amount in controversy exceeds $75,000. Plaintiff did not argue this line of reasoning to save the Court's time and resources, but is prepared to do so should the Court desire it.

5

Marland not to sell his stock on the NASDAQ, on the grounds that Heysel is a resident of Dubai. This argument also ignores settled law regarding personal jurisdiction over corporate officers involved in alleged securities frauds, and should be rejected.

In *In re CINAR Corp. Securities Litigation*, 186 F.Supp.2d 279, 304-05 (E.D.N.Y. 2002), Judge Dearie, quoting Second Circuit cases, opined the legal framework for the basis of personal jurisdiction under the Securities Exchange Act:

> Section 27 of the Exchange Act establishes the basis for personal jurisdiction in securities cases. *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1250-51 (S.D.N.Y.1984) (citing *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972) (Friendly, J.)); *see* 15 U.S.C. § 78aa. The Restatement (Second) of Conflict of Laws elaborates three distinct bases for exercising jurisdiction over a foreign defendant that apply under Section 27. *Leasco,* 468 F.2d at 1341. Jurisdiction is proper if "a foreign defendant ... (1) does business in the forum (Restatement § 35); (2) does an act in the forum (Restatement § 36); or (3) causes an effect in the forum by an act done elsewhere (Restatement § 37)." *Id.*

Judge Dearie continued:

> Section 27's reach extends only as far as the due process clause of the Fifth Amendment allows. *Id.* at 1339-40. Accordingly, the Court may exercise jurisdiction over [the Defendant] only if [he] has established minimum contacts with the United States such that the exercise of jurisdiction will "not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). [The Defendant's] contacts with the forum state must be such that [he] "could reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *Leasco,* the Second Circuit highlighted these limitations on the reach of Section 27, noting that, especially in the context of Restatement § 37, courts should guard against applying too low a threshold of foreseeability. *See Leasco,* 468 F.2d at 1341. "The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him." *Id.* The Court also emphasized that "it is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities in the forum State ..." *Id.* at 1340 (emphasis added) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

Applying this analytical framework, the Court should find that it has jurisdiction over Heysel because Heysel has been conducting systematic and continuous business in the United

States since 2000.  Public records confirm that Heysel is the Executive Chairman of the Board, Director and Principal Accounting Officer of Big Sky, a Nevada corporation which is traded on the NASDAQ.  *See* Exhibit 1, Signature of Matthew Heysel on 10-KSB Report filed with the Securities and Exchange Commission ("SEC").  Heysel regularly signs and submits reports to the SEC on behalf of Big Sky.  Heysel must know that these SEC filings are made to comply with the laws governing securities offerings in American markets and, as such, would be used and relied upon by American investors.  There can be no clearer purposeful availment of the privilege of doing business in the United States than this.  Heysel thus knew or had reason to know that his conduct as CEO had effects in the United States and should reasonably anticipate being haled into this Court in a matter arising out of his conduct as Big Sky's CEO.

In the alternative and at the least, the Court should find that it has specific jurisdiction over Heysel because Heysel is alleged to have caused an effect in the United States – *i.e.*, inducing Marland to refrain from selling his stock on the NASDAQ – by an act occurring outside of the United States.

Moreover, discovery will show that the SEC report which was filed by Big Sky immediately following the fraudulent act was itself a fraudulent overstatement of Big Sky's prospects.  In *Itoba*, the Second Circuit held that a Director and Deputy Chairman of defendant LEP was subject to jurisdiction in the United States for merely approving of the filing of a particular form required by the SEC that later turned out to be fraudulent.  *Itoba,* 930 F.Supp. at 41 (on remand from *Itoba*, 54 F.3d 118).  Indeed, the fact that the Director did not even attend the board meetings where the documents were approved by the board was immaterial. *Id.*  As a Director on the board of Big Sky, whether Heysel was present at the board meetings or not, he would also be subject to the specific jurisdiction of this Court for this reason as well.

7

## CONCLUSION

Defendants offer no reason why this Court should depart from decades of settled law regarding jurisdiction over alleged securities fraud by an American company and its CEO in connection with securities traded on an American stock exchange. Defendants' Motion to Dismiss should therefore be denied.

New York, New York
July 9th, 2008

>                                HAYES & MALONEY LLP
>
>                           By: _____
>                                Shawn L. Tabankin (ST-2289)
>                                Andrew W. Hayes (AH-2570)
>                                1 Rockefeller Plaza, Suite 1005
>                                New York, N.Y. 10020
>                                212-554-3120
>
>                                Attorneys for Plaintiff
>                                MARLAND FRANCOIS

# EXHIBIT 1

10KSB 1 final10ksb2006filing.htm

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

---

## FORM 10-KSB

[X] ANNUAL REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended: December 31, 2006

[ ] TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number:
**Big Sky Energy Corporation**
(Exact name of small business issuer in its charter)

| NEVADA | 72-1381282 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| Suite 6, 8 Shepherd Market, Mayfair, London, UK | T2P 5E9 |
| (Address of principal executive offices) | (Zip Code) |

| Issuer's telephone number: 1 (403) 234-8282 | None |
|---|---|
| Securities Registered Under Section 12(b) of the Exchange Act: | Common Stock, $0.001 par value (Title of class) |

Securities Registered Under Section 12(g) of the Exchange Act:

Check whether the issuer (1) has filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the past 12 months (or for such shorter period that the Corporation was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [ ] No [X]

Check if there is no disclosure of delinquent filers in response to Item 405 of Regulation S-B is not contained in this form, and no disclosure will be contained, to the best of Corporation's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-KSB or any amendment to this Form 10-KSB. [ ]

Indicate by Check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act) Yes [ ] No [X]

Revenue for the most recent fiscal year: $8,547,584

Aggregate market value of voting and non-voting common stock held by non-affiliates of the Corporation using the average of the bid and asked price of the common stock, as of March 21, 2008: $6,494,234.

Number of shares outstanding of each of the Corporation's classes of common stock, as of March 21, 2008 equals 166,432,498 shares of common stock, par value US$0.001 per share.

**DOCUMENTS INCORPORATED BY REFERENCE: None**

Transitional Small Business Disclosure Format YES [ ] NO [X]

prior to the commencement of the contemplated services, or b) after the commencement of the contemplated services but before the completion of such services.

The Chairman of the Audit Committee or the designated Financial Expert, should they also be, at the time of approval, an independent director, are empowered to approve the contemplated services to be provided by the independent auditor on behalf of the committee. All approvals taken by the Chairman or Financial Expert must be disclosed to the committee as a whole either a) in writing or by e-mail at the time of the approval; or b) verbally at a subsequent committee meeting.

Since September 4, 2003, the date our Audit Committee members were appointed to the Committee, they have approved all services provided by L J Soldinger Associates LLC. Prior to this, services were not pre-approved.

## SIGNATURES

In accordance with Section 13 or 15(d) of the Exchange Act, the Corporation caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, as follows:

**Big Sky Energy Corporation**

Date: April   02, 2008    By    /s/ Servet Harunoglu

Name: Servet Harunoglu

Title: Chief Executive Officer

(Principal Executive Officer)

52

Date: April 02, 2008    By    /s/ Mathew J. Heysel

Name: Matthew J Heysel

Title: Executive Chairman of the Board, Director and Principal Accounting Officer

In accordance with the Exchange Act, this report has been signed below by the following persons on behalf of the Corporation and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ Matthew Heysel<br>Matthew Heysel | Director | April 02, 2008 |
| /s/ Daniel C. Feldman<br>Daniel C. Feldman | Director | April 02, 2008 |
| /s/ Philip Pardo<br>Philip Pardo | Director | April 02, 2008 |
| /s/ Barry Swersky<br>Barry Swersky | Director | April 02, 2008 |
| /s/ Servet Harunoglu<br>Servet Harunoglu | Director | April 02, 2008 |

53

**BIG SKY ENERGY CORPORATION**
TABLE OF CONTENTS

| | Page |
|---|---|
| Report of Independent Registered Public Accounting Firm | F-2 |