UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FRANCOIS MARLAND,

                Plaintiff,

     -against-                                     08 Civ. 3751 (LAK)

MATTHEW HEYSEL and BIG SKY ENERGY
CORPORATION,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

       Appearances:

              Andrew W. Hayes
              HAYES & MALONEY LLP
              *Attorneys for Plaintiff*

              Lloyd B. Chinn
              PROSKAUER ROSE LLP
              *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

       This is an action by a Frenchman against a Canadian for an alleged securities fraud in Dubai. Not surprisingly, defendants move to dismiss for lack of subject matter jurisdiction and, in the alternative, lack of personal jurisdiction over the individual defendant.

*Facts*

*Parties*

The plaintiff, Francois Marland, is a French citizen who resides in Switzerland.[1] Defendant Big Sky Energy Corporation, although incorporated under the laws of Nevada, has its principal place of business in London and offices in Canada and Kazakhstan.[2] Its shares are traded on NASDAQ.[3] Its chairman, defendant Matthew Heysel, is a Canadian citizen resident in Dubai.[4]

In early 2006, Marland began buying Big Sky shares. By June 11, 2006, he had accumulated 250,000 shares valued at $277,500.[5]

*The Alleged Fraud*

On June 11, 2006, Piero Ventura, an associate of Marland, met Heysel in a hotel in Dubai. The two allegedly discussed Big Sky's loss of an important oil field as well as the company's general prospects. According to the complaint, Heysel told Ventura that Big Sky had just signed an agreement with Alexander Maschkevich, whom he described as being well connected in the Kazakh region and as a main shareholder of Eurasia Group. In addition, Heysel related that he had given

---

[1] Cpt. ¶ 3.

[2] *Id.* ¶ 5.

[3] *See id.* ¶ 9.

[4] Heysel Decl. ¶ 2.

[5] Cpt. ¶¶ 9-10.

3

Eurasia Group several million shares of Big Sky to recover the lost oil field for the company. He claimed that Big Sky would become a billion dollar company as a result of these developments. He urged Marland not to sell his Big Sky shares and allegedly added that he "had conveyed this information as 'inside information' in advance of any public announcement."[6]

Marland claims that he in consequence "was effectively frozen," implying that this was so because he believed that he could not sell his shares while in possession of inside information. He continued to hold his stock, rather than sell, as Big Sky shares dropped to approximately 4 cents per share.[7] He charges Heysel and Big Sky with fraud on the theory that Heysel's statements were materially false in that "Eurasia Group did not enter into a strategic partnership with Big Sky, nor did it gain any major stock interest in exchange for providing business opportunities that might have increased Big Sky's market value."[8] Moreover, Big Sky, he says, did not recover the lost oil field.[9]

---

[6] *Id.* ¶¶ 11-13.

[7] *Id.* ¶ 14.

[8] *Id.* ¶ 15.

[9] *Id.*

4

*The Complaint*

The complaint contains four causes of action. The first and third charge Heysel and Big Sky, respectively, with common law fraud based on the alleged misrepresentations by Heysel to Ventura. The second and fourth allege violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")[10] and Rule 10b-5 thereunder[11] against Heysel and Big Sky, respectively, on the same theory.

*Discussion*

*Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction. Plaintiffs therefore always have the burden of pleading and proving subject matter jurisdiction.[12]

In this circuit, as in many others, the extraterritorial application of the Exchange Act long has been characterized as implicating a court's subject matter jurisdiction.[13] A recent Supreme Court decision, however, raises the question whether it properly is characterized instead as going to

---

[10] 15 U.S.C. § 78j(b).

[11] 17 C.F.R. § 240.10b-5.

[12] *E.g.*, *McNutt v. Gen. Motors Acc. Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

[13] *See, e.g.*, *SEC v. Berger*, 322 F.3d 187, 192-95 (2d Cir. 2003); *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 984-90 (2d Cir. 1975).

5

the existence of a claim under the federal securities laws. In *Arbaugh v. Y & H Corp.*,[14] the Supreme Court concluded that Title VII's definition of "employer" as having fifteen or more employees was an element of the Title VII claim rather than a limitation on subject matter jurisdiction. The Court, observing that "[o]n the subject-matter-jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous,"[15] enunciated a "readily administrable bright line" rule: "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."[16]

The limits on the extraterritorial application of the Securities Exchange Act are not set forth in the text of the Act itself, but instead reflect a recognition by the courts that Congress would not have wished "the precious resources of United States courts and law enforcement agencies" to be spent on predominantly foreign transactions.[17] *Arbaugh*'s "bright line" rule thus suggests that this limit is an element of a securities fraud claim rather than a restriction on a court's

---

[14] 546 U.S. 500 (2006).

[15] 546 U.S. at 1242.

[16] *Id.* at 1245.

[17] *Bersch*, 519 F.2d at 985.

subject matter jurisdiction.[18]  The Court need not decide the issue, however.  While the appropriate characterization may affect the outcome in other cases, movants here prevail in either event.

In *Bersch v. Drexel Firestone, Inc.*,[19] Judge Friendly articulated the governing rule. The Test is "(1) whether the wrongful conduct occurred in the United States, and (2) whether the wrongful conduct had a substantial effect in the United States or upon United States citizens."[20]

In this case, the complaint affirmatively alleges that the allegedly wrongful conduct occurred in Dubai and that the injury complained of was sustained by a French citizen resident in Switzerland.  There is no allegation that the alleged fraud had a substantial effect in the United States.  Accordingly, the complaint satisfies neither the conduct nor the effects test.[21]

Perhaps in recognition of the abject insufficiency of the complaint in this respect, Marland argues that decisive weight should be afforded to his allegations that Big Sky is a Nevada corporation, that unspecified acts and practices occurred in this district, and that Marland purchased Big Sky shares in early 2006 over the NASDAQ.  The short answer is that none of these allegations

---

[18] *See Republic of Colombia v. Diageo N. Am. Inc.*, No. 04 Civ. 4372 (NGG), 2007 WL 1813744, at *7-8 (E.D.N.Y. June 19, 2007) (questioning whether *Arbaugh* requires that the extraterritorial application of RICO be treated as an element of the claim but declining to decide the issue); *Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201 (GEL), 2006 WL 587342, at *4 n.2 (S.D.N.Y. Mar. 9, 2006) (same).

[19] 519 F.2d 974.

[20] *SEC v. Berger*, 322 F.3d 187, 192 (2d Cir. 2003); *see also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 510 (S.D.N.Y. 2005).

[21] The Court recognizes that these two tests perhaps need not "be applied separately or distinctly."  *E.ON AG v. Acciona, S.A.,* 468 F. Supp.2d 537, 547 (S.D.N.Y. 2006).  In this case, however, the whole is no greater than the sum of the parts – zero plus zero still equals zero.

7

matters. Big Sky's state of incorporation is entirely immaterial, as it bears no relationship to the location of the wrongful conduct or its effects. Marland's earlier purchases are immaterial because they are not alleged to have been made as a result of or in connection with the alleged securities fraud. And his reliance on unspecified acts or practices in this district is unavailing, at least because (1) the plaintiff in this posture must "proffer the necessary factual predicate – not just an allegation in a complaint,"[22] (2) such vague allegations in any case fail to comply with FED. R. CIV. P. 9(b), and (3) the complaint draws no connection between the unspecified acts and practices, which are offered only to support venue,[23] and the allegedly wrongful conduct or its effects.

*Conclusion*

Accordingly, defendants' motion to dismiss the complaint [docket item 7] is granted. The second and fourth causes of action are dismissed on the alternative grounds that they fail to allege a basis for subject matter jurisdiction and to state a claim upon which relief may be granted.[24] The first and third causes of action are dismissed for lack of subject matter jurisdiction, as the Court declines to exercise supplemental jurisdiction over them in view of the dismissal of the federal

---

[22] *London v. Polishook,* 189 F.3d 196, 199 (2d Cir. 1999).

[23] Cpt. ¶ 7.

[24] Parenthetically, the Court notes that the Section 10(b) and Rule 10b-5 claims are insufficient for yet another reason. As plaintiff alleges only that he was defrauded into *holding* his shares, the complaint fails to allege the purchase or sale of securities in connection with the alleged fraud that is an essential element for 10b-5 liability. *E.g., Blue Chip Stamps v. Manor Drug Stores, Inc.,* 421 U.S. 723 (1975).

8

claims. In accordance with Section 21D(c) of the Private Securities Litigation Reform Act,[25] plaintiff and his attorney are advised that the Court is obliged to consider whether to impose sanctions upon them. They shall show cause, on or before July 24, 2008, why that should not be done.

SO ORDERED.

Dated:     July 10, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[25] 15 U.S.C. § 78u-4(c).