## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANÇOIS MARLAND, | Case No.   08 CIV 3751 (LAK) (DCF) ECF CASE |
| Plaintiff, | |
| – against – | |
| MATTHEW HEYSEL, and BIG SKY ENERGY CORPORATION, | NOTICE OF MOTION TO RECONSIDER AND FOR LEAVE TO AMEND THE COMPLAINT |
| Defendants. | |

**PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law in Support of Plaintiff's Motion to Reconsider, for Leave to Amend the Complaint and Response to the Court's Order to Show Cause, Plaintiffs will Move this Court, before the Honorable Lewis Kaplan, United States District Judge, 500 Pearl Street, New York, New York, for an order (i) denying, upon reconsideration, Defendants' motion to dismiss and holding that the Court has subject matter jurisdiction over Plaintiff's claims; and (ii) if the Court deems it necessary, granting Plaintiff leave to submit an amended complaint in the form annexed hereto (in both plain and redline format); pursuant to Local Civil Rule 6.3 and Rules 12(b)(1) and 15(a)(2) of the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Civil Rule 6.1(b), any opposing papers shall be served by August 7, 2008 and any reply papers shall be served by August 14, 2008.

Dated: New York, New York
        July 24, 2008

HAYES & MALONEY LLP

By: _Andrew W. Hayes_

Andrew W. Hayes (AH-2570)
1 Rockefeller Plaza, Suite 1005
New York, N.Y. 10020
212-554-3120

Attorneys for Plaintiff
FRANÇOIS MARLAND

2

[Proposed] Amended Complaint
(Plain Format)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————————

FRANCOIS MARLAND,

                    **Plaintiff,**

        – against –

MATTHEW HEYSEL, and
BIG SKY ENERGY CORPORATION,

                    **Defendants.**

———————————————————————

**Case No.** 08 CIV 3751
(LAK) (DCF)
(ECF CASE)

[PROPOSED]
AMENDEDCOMPLAINT
FOR VIOLATIONS OF
THE FEDERAL
SECURITIES LAWS

 

1.      Plaintiffs Francois Marland ("Marland"), by and through his undersigned counsel, alleges the following against Defendant Matthew Heysel ("Heysel") and Big Sky Energy Corporation ("Big Sky"):

### <u>Nature of the Action</u>

2.      This matter involves a securities fraud perpetrated by Defendant Heysel, acting as CEO of Defendant Big Sky, and on behalf of Big Sky.  As detailed below, the Defendants have directly engaged in practices which are violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder 17 C.F.R. § 240.10b-5.

### <u>PARTIES</u>

3.      Plaintiff Francois Marland is a French citizen living in Geneva, Switzerland.

4.      Defendant Matthew Heysel has served as Chairman of the Board of Directors and Chief Executive Officer of Big Sky Energy Corporation from 2000 until May, 2005.  Heysel was also Chairman of Big Sky Energy Corporation's subsidiaries Big Sky Energy Kazakhstan Ltd.

and Big Sky Energy Atyrau Ltd.  Heysel currently serves as the Executive Chairman of the Board of Big Sky Energy Corporation.

5.      Defendant Big Sky Energy Corporation (hereafter, "Big Sky") is a multinational corporation, incorporated in Nevada with its principal place of business located in London, United Kingdom.  Big Sky also maintains offices in Alberta, Canada and Almaty, Kazakhstan.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.      This Court is the proper venue for this action because certain transactions, acts, practices and courses of business have occurred in the Southern District of New York, including, but not limited to, the sales of stock in the defendant company on the NASDAQ within the Southern District of New York.

8.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## FACTS

9.      Marland, directly and indirectly, began purchasing common stock of Big Sky in early 2006 off the NASDAQ exchange (ticker symbol BSKO) located within the Southern District of New York.

10.      As of June 11th, 2006, Marland beneficially owned 250,000 shares of Big Sky, valued at $277,500.

11.     On or about 11:00am, June 11th, 2006, Marland's associate, Piero Ventura, met with the Defendant at the Park Hyatt in Dubai to discuss several of Mr. Marland's concerns regarding Big Sky's performance.  Mr. Ventura and the Defendant discussed Big Sky's loss of an important oil field through a purportedly unauthorized sale by a company employee, as well as the general prospects of Big Sky.

12.     The Defendant told Mr. Ventura that Big Sky "had just signed an agreement with Alexander Maschkevich," whom the Defendant described as the owner, or one of the main shareholders of Eurasia Group, and as someone who was extremely well connected with high levels of government in the Kazakh region.  The Defendant said that he had given Eurasia Group several million shares of Big Sky in exchange for Eurasia Group to recover the lost oil field for Big Sky, and to generally revitalize the company.  The Defendant told Mr. Ventura that as a result of these new developments, Big Sky "would become a billion dollar company."

13.     Citing these reasons, the Defendant told Mr. Ventura to urge Mr. Marland not to sell his shares, adding that the defendant had conveyed this information as "inside information" in advance of any public announcement, which Heysel said would be made in a couple of days.

14.     On June 14, 2006, Big Sky filed a form 8-K with the U.S. Securities Exchange Commission (the "Big Sky 8-K" annexed hereto as Exhibit 1), which appeared to disclose the consulting agreement that Heysel had described to Ventura.  The Big Sky 8-K stated that Big Sky had issued options to purchase up to 25 million shares of stock to a "consulting firm" to aid Big Sky in securing clear title to certain "hydrocarbon properties" in Kazakhstan.

15.     Relying on Heysel's statements and this SEC filing, Marland did not sell his stock, and instead purchased an additional 250,000 shares of Big Sky, doubling his position.

16. Instead of increasing sharply as the defendant had stated, Big Sky's stock began to decline – eventually sinking to less than $0.04/share, where it has remained.

17.     Heysel's statements were materially false.  Eurasia Group did not enter into a strategic partnership with Big Sky, nor did it gain any major stock interest in exchange for providing business opportunities that might have increased Big Sky's market value. Additionally, the oil field that Big Sky had lost was never recovered.

## First Cause of Action
### (Against Heysel)

18.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 15 above, as if set forth fully herein.

19.     Defendant Heysel's acts, schemes and misrepresentations reflected in his false statements to Marland's agent constitute common law fraud under the law of the State of New York, or of such other state whose law would apply to this action.

20.     Defendant Heysel acted intentionally, willfully, for profit, and without just cause or excuse in making his false statements to Marland's associate.

21.     Heysel intended Marland to rely upon the false statements.  Marland did rely on Heysel's false statements, and Marland's reliance was reasonable.

22.     As a result of Marland's reliance on Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

## Second Cause of Action
### (Against Heysel)

23.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 20 above, as if set forth fully herein.

24.    Defendant Heysel has violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities and upon other persons, in connection with the purchase or sale of a security.

25.    Defendant Heysel knew or should have known that his statement to Ventura that Big Sky had "just signed an agreement" with Alexander Maschkevich to revitalize the company was a material misstatement.  Heysel also should have known that his categorical assurance to Ventura that Big Sky would recover the lost oil field was a materially false statement that omitted any cautionary language or reservation.

26.    Defendant Heysel knew or should have known, that Marland would reasonably rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks.  Marland's reliance on Heysel's representations, made to Marland's business associate Piero Ventura and repeated in the Big Sky 8-K, was reasonable under the circumstances.

27.    As a result of Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

**Third Cause of Action**
**(Against Big Sky)**

28.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 25 above, as if set forth fully herein.

29.    Big Sky's CEO Heysel's acts, schemes and misrepresentations reflected in his false statements to Marland's agent constitute common law fraud under the law of the State of New York, or of such other state whose law would apply to this action.

30.    Heysel, as CEO of Defendant Big Sky, acted intentionally, willfully, for profit, and without just cause or excuse in making his false statements to Marland's associate.

31.    Heysel, as CEO of Big Sky, intended Marland to rely on his false statements. Marland did reasonably rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks.  Marland's reliance on Heysel's representations, made in Heysel's capacity as CEO of Big Sky, was reasonable under the circumstances.

32.    As a result of Marland's reliance on Big Sky's CEO's false statements, Marland has suffered damages in an amount to be determined at trial.

**Fourth Cause of Action**
**(Against Big Sky)**

31.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 29 above, as if set forth fully herein.

32.    Defendant Big Sky has violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact

or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities and upon other persons, in connection with the purchase or sale of a security.

33.    Defendant Big Sky's CEO Heysel knew or should have known, that his statement expressing that Big Sky had "just signed an agreement" with Alexander Maschkevich to recover the lost oil fields and revitalize the company was a material misstatement.  Heysel also should have known that his categorical assurance to Ventura that Big Sky would recover the lost oil field was a materially false statement that omitted any cautionary language or reservation.

34.    Defendant Big Sky's CEO Heysel knew or should have known, that Marland would reasonably rely upon Big Sky's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks.  Marland's reliance on Big Sky's representations, made through Heysel in his capacity as CEO of Big Sky and repeated in the Big Sky 8-K, was reasonable under the circumstances.

35.    As a result of Big Sky's CEO Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.


### PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff respectfully requests that this Court:

A.    Find that the Defendants Matthew Heysel and Big Sky Energy Corporation committed securities fraud and common law fraud, violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b);

B.    Award compensatory damages in favor of the Plaintiff against all Defendants,

jointly and severally, for all damages sustained as a result of the Defendant's wrong doing, in an

amount to be proven at trial, including interest thereon;

C.    Award Plaintiffs their reasonable costs and expenses incurred in this action,

including counsel fees and expert fees;

D.    Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, in conformity with Rule 38(b) of the Federal

Rules of Civil Procedure.

New York, New York
_____, 2008


HAYES & MALONEY LLP


By:_____
    Andrew W. Hayes (AH-2570)
    1 Rockefeller Plaza, Suite 1005
    New York, N.Y. 10020
    212-554-3120

    Attorneys for Plaintiff
    MARLAND FRANCOIS

# EXHIBIT

# 1

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0060 |
| Expires: | March 31, 2008 |
| Estimated average burden | |
| hours per response    )28.0 | |

# UNITED STATES
## SECURITIES AND EXCHANGECOMMISSION
### Washington, D.C. 20549

# FORM 8-K

## CURRENT REPORT
**Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported)        June 14, 2006

## BIG SKY ENERGY CORPORATION

(Exact name of registrant as specified in its charter)

| Nevada | 0-28345 | 72-1381282 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

750, 440 - 2 Avenue S.W., Calgary, Alberta, Canada        T2P 5E9

(Address of principal executive offices)                (Zip Code)

403.234.8885

Registrant s telephone number, including area code

(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

X    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
     Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a -12)
     Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d -2(b))
     Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e -4(c))

## Item 1.01 Entry into a Material Definitive Agreement

On June 9, 2006, Big Sky Energy Corporation (the  Company ) retained the services of a private, independent, third-party consulting firm to assist the Company with regard to certain title and other issues that have arisen as to certain of the Company s hydrocarbon properties (the  Services ) located in Kazakhstan, given the difficulties and challenges the Company has faced and had to contend with (as previously reported).

The Company has issued options to the consulting firm to purchase up to 25 million shares of the Company s common stock, which grant the right to the consulting firm, dependent on their success in delivering the Services and, thus, in securing clear title to these blocks. The options are exercisable after a period of six (6) months from their grant, have an exercise price equal to the five (5) day weighted average closing bid price of the Company s stock prior to June 9, 2006 and are resaleable after exercise and payment therefore upon either expiration of a period of one (1) year from the date of exercise or upon the necessary Form SB-2 Registration Statement becoming effective, whichever is the earlier. Also, upon the successful completion of the Services, the consulting firm shall be deemed to have acquired an indirect participating interest in such hydrocarbon properties. The parties have agreed to subsequently convert the value of the consulting firm s interest in such hydrocarbon properties into common shares of the Company.

If, however, the Services are not successfully completed within six (6) months from the date of the agreement, the options shall immediately terminate with no further rights.

## Item 5.02   Election of Director

On June 9, 2006, the Company expanded the number of authorized members of its Board of Directors to nine (9) in anticipation of the appointment of a nominee of consulting firm referenced in Item 1.01 above to the Board.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange of 1934, the registrant has caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**DATE:        June 14, 2006**

**BIG SKY ENERGY CORPORATION**


By:  /s/  S. A. (Al) Sehsuvaroglu
Name:
Mr S.A. (Al) Sehsuvaroglu
Title:
President, Chief Executive Officer and Director

[Proposed] Amended Complaint
(Redline Format)

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCOIS MARLAND,<br><br>                    Plaintiff,<br><br>        – against –<br><br>MATTHEW HEYSEL, and<br>BIG SKY ENERGY CORPORATION,<br><br>                    Defendants. | Case No.  08 CIV 3751<br>(LAK) (DCF)<br>(ECF CASE)<br><br>[PROPOSED]<br>AMENDEDCOMPLAINT<br>FOR VIOLATIONS OF<br>THE FEDERAL<br>SECURITIES LAWS |

1.      Plaintiffs Francois Marland ("Marland"), by and through his undersigned counsel, alleges the following against Defendant Matthew Heysel ("Heysel") and Big Sky Energy Corporation ("Big Sky"):

#### Nature of the Action

2.      This matter involves a securities fraud perpetrated by Defendant Heysel, acting as CEO of Defendant Big Sky, and on behalf of Big Sky.  As detailed below, the Defendants have directly engaged in practices which are violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder 17 C.F.R. § 240.10b-5.

#### PARTIES

3.      Plaintiff Francois Marland is a French citizen living in Geneva, Switzerland.

4.      Defendant Matthew Heysel has served as Chairman of the Board of Directors and Chief Executive Officer of Big Sky Energy Corporation from 2000 until May, 2005.  Heysel was also Chairman of Big Sky Energy Corporation's subsidiaries Big Sky Energy Kazakhstan Ltd.

and Big Sky Energy Atyrau Ltd.  Heysel currently serves as the Executive Chairman of the Board of Big Sky Energy Corporation.

5.      Defendant Big Sky Energy Corporation (hereafter, "Big Sky") is a multinational corporation, incorporated in Nevada with its principal place of business located in London, United Kingdom.  Big Sky also maintains offices in Alberta, Canada and Almaty, Kazakhstan.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.      This Court is the proper venue for this action because certain transactions, acts, practices and courses of business have occurred in the Southern District of New York, including, but not limited to, the sales of stock in the defendant company on the NASDAQ within the Southern District of New York.

8.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## FACTS

9.      Marland, directly and indirectly, began purchasing common stock of Big Sky in early 2006 off the NASDAQ exchange (ticker symbol BSKO) located within the Southern District of New York.

10.     As of June 11th, 2006, Marland beneficially owned 250,000 shares of Big Sky, valued at $277,500.

11.     On or about 11:00am, June 11th, 2006, Marland's associate, Piero Ventura, met with the Defendant at the Park Hyatt in Dubai to discuss several of Mr. Marland's concerns regarding Big Sky's performance.  Mr. Ventura and the Defendant discussed Big Sky's loss of an important oil field through a purportedly unauthorized sale by a company employee, as well as the general prospects of Big Sky.

12.     The Defendant told Mr. Ventura that Big Sky "had just signed an agreement with Alexander Maschkevich," whom the Defendant described as the owner, or one of the main shareholders of Eurasia Group, and as someone who was extremely well connected with high levels of government in the Kazakh region.  The Defendant said that he had given Eurasia Group several million shares of Big Sky in exchange for Eurasia Group to recover the lost oil field for Big Sky, and to generally revitalize the company.  The Defendant told Mr. Ventura that as a result of these new developments, Big Sky "would become a billion dollar company."

13.     Citing these reasons, the Defendant told Mr. Ventura to urge Mr. Marland not to sell his shares, adding that the defendant had conveyed this information as "inside information" in advance of any public announcement, which Heysel said would be made in a couple of days.

14.     On June 14, 2006, Big Sky filed a form 8-K with the U.S. Securities Exchange Commission (the "Big Sky 8-K" annexed hereto as Exhibit 1), which appeared to disclose the consulting agreement that Heysel had described to Ventura.  The Big Sky 8-K stated that Big Sky had issued options to purchase up to 25 million shares of stock to a "consulting firm" to aid Big Sky in securing clear title to certain "hydrocarbon properties" in Kazakhstan.

15.     Relying on Heysel's statements and this SEC filing, Marland did not sell his stock, and instead purchased an additional 250,000 shares of Big Sky, doubling his position.

**Deleted:** Having been given what he was told was inside information, Marland's position was effectively frozen.

**Deleted:** continued to hold his stock in

16. Instead of increasing sharply as the defendant had stated, Big Sky's stock began to decline – eventually sinking to less than $0.04/share, where it has remained.

17. Heysel's statements were materially false. Eurasia Group did not enter into a strategic partnership with Big Sky, nor did it gain any major stock interest in exchange for providing business opportunities that might have increased Big Sky's market value. Additionally, the oil field that Big Sky had lost was never recovered.

**First Cause of Action**
**(Against Heysel)**

18. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 15 above, as if set forth fully herein.

19. Defendant Heysel's acts, schemes and misrepresentations reflected in his false statements to Marland's agent constitute common law fraud under the law of the State of New York, or of such other state whose law would apply to this action.

20. Defendant Heysel acted intentionally, willfully, for profit, and without just cause or excuse in making his false statements to Marland's associate.

21. Heysel intended Marland to rely upon the false statements. Marland did rely on Heysel's false statements, and Marland's reliance was reasonable.

22. As a result of Marland's reliance on Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

**Second Cause of Action**
**(Against Heysel)**

23. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 20 above, as if set forth fully herein.

Deleted: 15
Deleted: 16
Deleted: 17
Deleted: 18
Deleted: 19
Deleted: 20
Deleted: 21

24.    Defendant Heysel has violated Section 10(b) of the Exchange Act and Exchange

Act Rule 10b-5, directly or indirectly, by use of the means or instruments of interstate commerce,

or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a)

employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact

or omitted to state material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; and (c) engaged in acts,

transactions, practices, and courses of business which operated or would operate as a fraud or

deceit upon the purchasers of securities and upon other persons, in connection with the purchase

or sale of a security.

25.    Defendant Heysel knew or should have known that his statement to Ventura that

Big Sky had "just signed an agreement" with Alexander Maschkevich to revitalize the company

was a material misstatement.  Heysel also should have known that his categorical assurance to

Ventura that Big Sky would recover the lost oil field was a materially false statement that

omitted any cautionary language or reservation.

26.    Defendant Heysel knew or should have known, that Marland would reasonably

rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, and to

purchase additional stock in the following weeks.  Marland's reliance on Heysel's

representations, made to Marland's business associate Piero Ventura and repeated in the Big Sky

8-K, was reasonable under the circumstances.

27.    As a result of Heysel's false statements, Marland has suffered damages in an

amount to be determined at trial.

Deleted: 22

Deleted: 23

Deleted: 24

Deleted: ,

Deleted: 25

### Third Cause of Action
### (Against Big Sky)

28.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 25 above, as if set forth fully herein.

29.    Big Sky's CEO Heysel's acts, schemes and misrepresentations reflected in his false statements to Marland's agent constitute common law fraud under the law of the State of New York, or of such other state whose law would apply to this action.

30.    Heysel, as CEO of Defendant Big Sky, acted intentionally, willfully, for profit, and without just cause or excuse in making his false statements to Marland's associate.

31.    Heysel, as CEO of Big Sky, intended Marland to rely on his false statements. Marland did reasonably rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks.  Marland's reliance on Heysel's representations, made in Heysel's capacity as CEO of Big Sky, was reasonable under the circumstances.

32.    As a result of Marland's reliance on Big Sky's CEO's false statements, Marland has suffered damages in an amount to be determined at trial.

### Fourth Cause of Action
### (Against Big Sky)

31.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 29 above, as if set forth fully herein.

32.    Defendant Big Sky has violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, knowingly or recklessly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact

Deleted: 26

Deleted: 27

Deleted: 28

Deleted: 29

Deleted: 30

or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities and upon other persons, in connection with the purchase or sale of a security.

33.    Defendant Big Sky's CEO Heysel knew or should have known, that his statement expressing that Big Sky had "just signed an agreement" with Alexander Maschkevich to recover the lost oil fields and revitalize the company was a material misstatement.  Heysel also should have known that his categorical assurance to Ventura that Big Sky would recover the lost oil field was a materially false statement that omitted any cautionary language or reservation.

34.    Defendant Big Sky's CEO Heysel knew or should have known, that Marland would reasonably rely upon Big Sky's false statements to decide to hold his Big Sky stock rather than sell it, and to purchase additional stock in the following weeks.  Marland's reliance on Big Sky's representations, made through Heysel in his capacity as CEO of Big Sky and repeated in the Big Sky 8-K, was reasonable under the circumstances.

35.    As a result of Big Sky's CEO Heysel's false statements, Marland has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff respectfully requests that this Court:

A.    Find that the Defendants Matthew Heysel and Big Sky Energy Corporation committed securities fraud and common law fraud, violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b);

B.      Award compensatory damages in favor of the Plaintiff against all Defendants,

jointly and severally, for all damages sustained as a result of the Defendant's wrong doing, in an

amount to be proven at trial, including interest thereon;

C.      Award Plaintiffs their reasonable costs and expenses incurred in this action,

including counsel fees and expert fees;

D.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, in conformity with Rule 38(b) of the Federal

Rules of Civil Procedure.

New York, New York

_____, 2008

**Deleted:** April 21

HAYES & MALONEY LLP


By:_____
       Andrew W. Hayes (AH-2570)
       1 Rockefeller Plaza, Suite 1005
       New York, N.Y. 10020
       212-554-3120

       Attorneys for Plaintiff
       MARLAND FRANCOIS

# EXHIBIT

# 1

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0060 |
| Expires: | March 31, 2008 |
| Estimated average burden | |
| hours per response        )28.0 | |

# UNITED STATES
## SECURITIES AND EXCHANGECOMMISSION
### Washington, D.C. 20549

## FORM 8-K

### CURRENT REPORT
**Pursuant to Section 13 OR 15(d) of The Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported)          June 14, 2006

## BIG SKY ENERGY CORPORATION

(Exact name of registrant as specified in its charter)

| Nevada | 0-28345 | 72-1381282 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

750, 440 - 2 Avenue S.W., Calgary, Alberta, Canada                    T2P 5E9

(Address of principal executive offices)                    (Zip Code)

403.234.8885

Registrant s telephone number, including area code

(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

X    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
     Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a -12)
     Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d -2(b))
     Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e -4(c))

http://www.sec.gov/Archives/edgar/data/1075247/000104476406000118/form8kfiling61406.htm

# Item 1.01 Entry into a Material Definitive Agreement

On June 9, 2006, Big Sky Energy Corporation (the  Company ) retained the services of a private, independent, third-party consulting firm to assist the Company with regard to certain title and other issues that have arisen as to certain of the Company s hydrocarbon properties (the  Services ) located in Kazakhstan, given the difficulties and challenges the Company has faced and had to contend with (as previously reported).

The Company has issued options to the consulting firm to purchase up to 25 million shares of the Company s common stock, which grant the right to the consulting firm, dependent on their success in delivering the Services and, thus, in securing clear title to these blocks. The options are exercisable after a period of six (6) months from their grant, have an exercise price equal to the five (5) day weighted average closing bid price of the Company s stock prior to June 9, 2006 and are resaleable after exercise and payment therefore upon either expiration of a period of one (1) year from the date of exercise or upon the necessary Form SB-2 Registration Statement becoming effective, whichever is the earlier. Also, upon the successful completion of the Services, the consulting firm shall be deemed to have acquired an indirect participating interest in such hydrocarbon properties. The parties have agreed to subsequently convert the value of the consulting firm s interest in such hydrocarbon properties into common shares of the Company.

If, however, the Services are not successfully completed within six (6) months from the date of the agreement, the options shall immediately terminate with no further rights.

## Item 5.02   Election of Director

On June 9, 2006, the Company expanded the number of authorized members of its Board of Directors to nine (9) in anticipation of the appointment of a nominee of consulting firm referenced in Item 1.01 above to the Board.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange of 1934, the registrant has caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**DATE:       June 14, 2006**

**BIG SKY ENERGY CORPORATION**


By:  /s/  S. A. (Al) Sehsuvaroglu
Name:
Mr S.A. (Al) Sehsuvaroglu
Title:
President, Chief Executive Officer and Director