UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

FRANÇOIS MARLAND,

                  Plaintiff,

      – against –

MATTHEW HEYSEL, and
BIG SKY ENERGY CORPORATION,

                  Defendants.

_____

Case No.    08 CIV 3751
                   (LAK) (DCF)
                   ECF CASE

**MEMORANDUM OF LAW IN SUPPORT OF PLANTIFF'S MOTION TO RECONSIDER, MOTION FOR LEAVE TO AMEND THE COMPLAINT, AND RESPONSE TO ORDER TO SHOW CAUSE**

## TABLE OF CONTENTS

                                                                                                                PAGE

PRELIMINARY STATEMENT ...............................................................................1

    Big Sky's 8-K Filing and Marland's Additional Purchases ............................1

ARGUMENT ............................................................................................................2

    I.    MARLAND'S PURCHASES OF BIG SKY STOCK ON THE NASDAQ, MADE IN RELIANCE ON HEYSEL'S FRAUDULENT STATEMENTS, SUFFICE TO GIVE THE COURT SUBJECT-MATTER JURISDICTION OVER THIS DISPUTE..........................................................................................2

    II.    THE COURT ALSO MISAPPLIED BERSCH TO CLAIMS BY AN INDIVIDUAL FOREIGNER RELATED TO SECURITIES TRADED ON THE NASDAQ......................................4

    III.    IN THE ALTERNATIVE, IF THE COURT DEEMS IT NECESSARY TO ESTABLISH JURISDICTION, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT ...............................................................................7

    IV.    IN ANY EVENT, SANCTIONS ARE NOT APPROPRIATE ............9

CONCLUSION ......................................................................................................10

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148 (2d Cir. 1984)......................................................................................................6

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.1975) ...............................1, 5

*Blue Chip Stamps v. Manor Drug Stores, Inc.,* 421 U.S. 723 (1975)....................2, 3

*Consol. Gold Fields PLC, v. Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989)................4

*IIT v. Vencap, Ltd.*, 519 F. 1001 (2d Cir. 1975) ......................................................1, 5

*Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 120-121 (2d Cir. 1995).....................6, 8

*In re Parmalat Sec. Litig.*, 376 F. Supp. 472 (S.D.N.Y. 2005) ..............................5, 9

*Schoenbaum v. Firstbrook*, 405 F.2d 200, 208 (2d Cir.) ...........................................3

*In re SCOR Holding (Switzerland) AG Litigation*, 537 F.Supp.2d 556, (S.D.N.Y. 2008)....................................................................................4, 7

*SEC v. Berger*, 322 F.3d 187, 195 (2d Cir. 2003...................................................1. 5

**PRELIMINARY STATEMENT**

The Court should reconsider its decision of July 10, 2008, which (1) overlooked the allegations in Paragraphs 24 and 29 of Plaintiff's Complaint that Marland "purchased additional stock" in defendant Big Sky Energy Corporation after, and in reliance on, the fraudulent statements set forth in the Complaint, *see* Complaint ¶¶ 24, 29, and (2) erroneously applied *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir 1975), which (a) was expressly limited to *class actions* on behalf of unnamed foreigners,[1] and (b) did not even consider the question of "losses to foreigners from sales to them *within the United States*." 519 F.2d at 993 (emphasis added).

Marland's additional purchases – here in New York on the NASDAQ – were alleged as part of his individual claims for violation of Rule 10b-5 (Counts II and IV of the Complaint). These purchases suffice to give this Court subject-matter jurisdiction over Marland's 10b-5 claims, and we respectfully submit that the Court should then reconsider its decision and exercise its supplemental jurisdiction over the balance of Marland's fraud claims as well.

In the alternative, if the Court deems it necessary, Marland is also prepared to amend his Complaint to add details regarding Big Sky's filing of a false and misleading 8-K report with the SEC on June 14, 2006, that repeated many of the false statements at issue in this action.

**Big Sky's 8-K Filing and Marland's Additional Purchases**

The Complaint alleges that Heysel made false statements to Marland's associate on June 11, 2006, with the express intention of dissuading Marland from selling his stock. Complaint ¶ 13. It is a matter of public record that Big Sky filed a Form 8-K report on June 14, 2006 (a copy of which is annexed to the proposed Amended Complaint as Exhibit 1), which appeared to

---

[1] *Id.* at 987; *SEC v. Berger*, 322 F.3d 187, 195 (2nd Cir. 2003) (noting limitation); *see IIT v. Vencap, Ltd.*, 519 F. 1001, 1017-18 & n. 31 (2nd Cir. 1975) (same).

1

publicly disclose a strategic partnership of the kind Heysel described to Marland's associate. The Complaint alleges that Marland purchased additional Big Sky stock in later weeks (Complaint ¶¶ 24,34) and the proposed Amended Complaint states that Marland purchased a total of 250,000 additional shares, which doubled his stake in the company.  *See* [Proposed] Amended Complaint, submitted herewith, at ¶ 15.

The Complaint omitted any reference to the 8-K because allegations regarding a false SEC filing might invite a class action lawsuit that would complicate and prolong Marland's efforts to recover on his own claims and possibly bankrupt Big Sky.  In addition, since Marland had actually relied on Heysel's specific statements, this is a simpler and more appealing case to present to a jury, and there appeared to be no need to allege facts that did not need to be proved.

In omitting any reference to the 8-K, the factual narrative of the Complaint omitted Marland's additional purchases after he was "unfrozen" by the filing.  Complaint ¶ 14.  That allegation was, however, left in Counts Two and Four, which alleged violations of Rule 10b-5, which had been drafted to comply with the rule promulgated in *Blue Chip Stamps v. Manor Drug Stores, Inc.,* 421 U.S. 723 (1975).

## ARGUMENT

I. **MARLAND'S PURCHASES OF BIG SKY STOCK ON THE NASDAQ, MADE IN RELIANCE ON HEYSEL'S FRAUDULENT STATEMENTS, SUFFICE TO GIVE THE COURT SUBJECT-MATTER JURISDICTION OVER THIS DISPUTE.**

Counts One and Three of the Complaint each allege that Heysel "knew that Marland would rely upon Heysel's false statements to decide to hold his Big Sky stock rather than sell it, *and to purchase additional stock in the following weeks."* (emphasis added).  *See* Complaint ¶¶ 24, 29.  These allegations satisfy the rule promulgated in *Blue Chip Stamps v. Manor Drug*

*Stores, Inc.,* 421 U.S. 723 (1975) to state a claim for violation of Rule 10b-5, and thus, we respectfully submit, require the Court to reconsider its decision.

Defendants did not raise the *Blue Chip Stamps* rule in their motion to dismiss. Instead, defendants based their motion on the flatly incorrect assertion that Marland's purchases of Big Sky stock involved "foreign securities." *See* Memorandum of Law in Support of Defendant's Motion to Dismiss, Docket Item No. 9 at 4 ("Motion to Dismiss")).[2] Plaintiff made the mistake of responding to the arguments as framed by defendants, emphasizing that Heysel's statements were intended to induce Marland not to sell the stock he already owned *on the NASDAQ*, without pointing out the simpler, dispositive allegation that Marland purchased additional stock on the NASDAQ after, and in reliance on, Heysel's false statements.

Plaintiff regrets this error, but we respectfully submit that the allegation was pled, specifically, for each 10b-5 claim, and that it was sufficient to give the court subject matter jurisdiction, even apart from the fact that Heysel's statements were repeated in the Big Sky 8-K. Since at least *Schoenbaum v. Firstbrook*, 405 F.2d 200, 208 (2nd Cir.), *modified in part*, 405 F.2d 215 (2nd Cir. 1968), federal courts have consistently exercised subject-matter jurisdiction over claims relating to purchases and sales of securities registered on a Untied States exchange, regardless of where the fraud was perpetrated, provided the transactions are detrimental to the interests of American investors.

---

[2] As Plaintiff understood the issue, "Defendants admit that they are relying upon "a body of case law for the exercise of subject matter jurisdiction over the claims of foreign plaintiffs regarding conduct related to *foreign securities transactions.*" *See* Motion to Dismiss at 4 (emphasis added). "This case, however, involves conduct related to *domestic securities transactions*, namely a Nevada corporation, Big Sky, whose stock was traded on the NASDAQ; only the Plaintiff and the situs of the fraud are foreign." Plaintiffs Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 2.

3

This rule is not now seriously disputed – and, importantly, it is met when even a small number of American investors trade in the security in question.  *See*, *e.g.*, *In re SCOR Holding (Switzerland) AG Litigation*, 537 F.Supp.2d 556, 560 n. 3 (S.D.N.Y. 2008) (emphasis added) (hereinafter, "*SCOR*").  *SCOR* was a proposed class action that included classes of US and foreign purchases of securities issued by a foreign company that were traded on the SWX, a foreign exchange, and linked to American Depository Shares on the NYSE.  In a comprehensive and well-reasoned decision that declined to exercise jurisdiction over foreign purchasers on the foreign exchange, Judge Cote noted:  "It has not been suggested that this Court lacks subject matter jurisdiction over the claims of U.S. residents who purchased Converium shares on the SWX, or over the claims of *any person* who purchased Converium ADSs on the NYSE.  As discussed below, the Court does indeed possess such jurisdiction." *Id.* at 560 n. 3 (emphasis added).

This holding in *SCOR* is particularly notable in that Judge Cote assumed that the purchase of ADSs on the NYSE "may be viewed as predominantly foreign securities transactions", *id.* at 561; even so, "it is not contested here that this Court has subject matter jurisdiction over claims arising out of such transactions under the effects test without consideration of the conduct test." *Id.; see also id.n.6* (the effects test was met "even where there are only a "relatively small number" of American investors", *citing Consol. Gold Fields PLC, v. Minorco, S.A.*, 871 F.2d 252, 262 (2nd Cir. 1989)).

## II.    THE COURT ALSO MISAPPLIED *BERSCH* TO CLAIMS BY AN INDIVIDUAL FOREIGNER RELATED TO SECURITIES TRADED ON THE NASDAQ.

While Marland's subsequent purchases should suffice to create subject-matter jurisdiction over at least those purchases (which at the time were half Marland's holdings), we

also respectfully submit that the Court erred in applying *Bersch* to claims be a foreign individual relating to securities traded on a US exchange.

*Bersch* concerned a Canadian corporation headquartered in Geneva offering its stock from London, Brussels, Toronto, Geneva and the Bahamas exclusively to non-U.S. residents[3]. *Id.* at 986-987. There were no claims relating any securities purchased on a US exchange. In crafting a jurisdictional test where the statute was entirely silent, Judge Friendly was clear to note what the court was not deciding: "Other fact situations, such as *losses to foreigners from sales to them within the United States*, are not before us." *Id.* at 993 (emphasis added).

*Bersch* was decided the same day as *IIT v. Vencap*, 519 F. 1001 and the two cases are companions. Both cases noted that *Bersch*'s analytical framework was limited to class actions, *see* 519 F.2d at 987, 519 F.2d at 1017-18 & n. 31, and the Second Circuit has recently reiterated that limitation. *See*, *e.g*, *SEC v. Berger*, 322 F.3d at 195.

Applying the considerations underlying *Bersch*'s analytical framework here, where an individual alleged very specific "conduct" quite different from the typical case, should lead to a finding of subject-matter jurisdiction (again, even apart from the matter of Big Sky's 8-K).

This Court has noted that "*[d]icta* in some cases contemplate that there might be jurisdiction over claims by foreigners resident outside the United States who purchased securities in the U.S. markets where the markets were affected by conduct by defendants that occurred outside the U.S." *In re Parmalat Sec. Litig.*, 376 F. Supp. 472, 511 n. 194 (S.D.N.Y. 2005) (noting that the issue was not before the court, as none of the securities at issue were purchased on a U.S. exchange). In the typical case, as the Court knows, the "conduct" at issue involves one

---

[3] For reasons unclear to the Second Circuit, some of the securities at issue were sold to U.S. residents. *Id.* at 991. The court held that there was subject matter jurisdiction as to such persons. *Id.*

5

or more foreign purchases or sales, determinations regarding insurance reserves, or inter-corporate transactions that allegedly affected securities purchased by American residents, or traded on American exchanges. *See*, *e.g.*, *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 120-121 (2d Cir. 1995). The causation is almost always indirect.

Here, by contrast, the conduct was directly focused on Big Sky's securities: Heysel is alleged to have specifically stated that Marland should *not sell stock listed on the U.S. exchange*, and boasted that a specific transaction had just been concluded that would *significantly increase the value of that stock*. Plaintiff respectfully submits that these statements were so specifically directed at securities registered and traded in the United States that the United States, and not Dubai, would be expected to exercise jurisdiction over the dispute. [4] Indeed, a holding that subject-matter jurisdiction is lacking here creates a double-standard for statements by corporate officers whose companies' securities are traded in the U.S.: they are subject to Rule 10b-5 when in America, speaking to Americans, or in a public forum overseas that would have an effect on American investors, they are free to lie when in private, overseas meetings with individual investors. We do not believe that the cases support such a carve-out from Rule 10b-5. However, the Court need not reach this issue, because Marland is prepared to allege that Heysel's false statements were also reflected in the Big Sky 8-K filed on June 14, 2006.

---

[4] *See AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148, 154 (2nd Cir. 1984) (noting contrast between "transactions in securities carried out, or intended to be carried out, on a securities market in the United States and other transactions in securities"; the court held that it could exercise subject-matter jurisdiction, but declined to do so based on choice-of-law clause in investment agreement). Defendants here do not claim that Dubai has a greater interest than the U.S. in policing fraud relating to securities traded on a U.S. exchange, nor that Dubai would actually exercise jurisdiction over this dispute.

**III.    IN THE ALTERNATIVE, IF THE COURT DEEMS IT NECESSARY TO ESTABLISH JURISDICTION, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT.**

As noted, Marland intends to prove his fraud based on Heysel's specific statements, and not on the Big Sky 8-K. However, if the Court believes it is necessary to establish subject matter jurisdiction, Marland is prepared to amend his complaint to allege that the false statements made by Heysel to Ventura were repeated in the Big Sky 8-K filed on June 14, 2006. Since the amendment would not be futile and Marland has not had a previous chance to amend, permission to amend should be granted if it is necessary to establish jurisdiction. *See* Fed.R.Civ.P. 15(a).

The amendment would not be futile: It is axiomatic that a federal court has subject matter jurisdiction over claims arising from alleged false statements in SEC filings relating to securities traded a U.S. exchange, regardless of where the filings were prepared or where the transactions described in the filings too place. *E.g.*, *SCOR*, 537 F.Supp.2d at 568 (allegedly misleading SEC filings "constitute U.S. conduct even though they were prepared abroad"; *quoting Berger*, 322 F.3d at 195).

The statements in the Big Sky 8-K regarding Big Sky's purported strategic partnership reflected most (though not all) of what Heysel had told Ventura, and were thus directly connected to the alleged fraud. They thus suffice to establish subject-matter jurisdiction over Marland's claims. Indeed, the Second Circuit has exercised subject matter jurisdiction over claims by foreigners who alleged false SEC filings that had much less direct connections to the U.S. securities exchange. *Itoba. v. Lep.*, 54 F.3d 118 is illustrative. *Itoba* concerned the purchase of "ordinary shares" (*i.e.*, common stock) of a UK corporation by a Channel Islands subsidiary of a non-resident U.S. company based in Bermuda ("Itoba"). *Id*. at 120. In addition to ordinary shares traded in London, the defendant corporation ("Lep") sold ordinary shares, in

7

the form of American Depository Shares ("ADSs") on the NASDAQ, thereby subjecting itself to the disclosure requirements of the United States security law. *Id.* As part of a planned acquisition of Lep by Itoba's parent, Itoba purchased Lep ordinary shares in London. *Id.* at 121. The plan ended when Lep disclosed a series of business reversals which resulted in a rapid, 97% decline in the price of Lep's shares. *Id.* Itoba then sued Lep and its officers in federal court, alleging that Lep failed to disclose material facts in its SEC filings related to its offer of ADSs, and that had Itoba known of these facts "it would not have purchased Lep's stock at artificially inflated prices."

The Second Circuit reversed the district court's grant of the defendants' motion to dismiss for lack of subject matter jurisdiction. *Id.* Applying the conduct test, the Circuit held that the situs of the preparation of SEC filings (outside the US) does not determine jurisdiction, because the securities laws cannot be "circumvented simply by preparing SEC filings outside the United States. *Id.* at 124.

The Circuit also rejected the district court's conclusion that Itoba and its parent did not read, and therefore did not rely on the SEC filing, holding that a "party need not personally have read a misleading financial report to establish reliance; derivative reliance is a well established basis for liability in a Rule 10b-5 action." *Id.* at 122.

Finally, the Second Circuit held that the fact that Itoba had purchased Lep's ordinary shares on the London exchange, rather than the ADRs traded on the NASDAQ was of no moment: "The conduct test does not center its inquiry on whether domestic markets or investors are affected, but on the nature of the conduct in the United States as it relates to carrying out the fraudulent scheme." *Id.* at 123. Here, as noted, the securities at issue were shares traded only on the NASDAQ, making the case for subject-matter jurisdiction even clearer.

8

**IV.     IN ANY EVENT, SANCTIONS ARE NOT APPROPRIATE.**

Defendants' motion to dismiss referred to "foreign securities transactions", and did not cite the *Blue Chip Stamps* rule.  Plaintiff's response focused on the erroneous "foreign" label, omitting to point out the allegation of actual stock purchases made in reliance on Helsel's alleged misrepresentations.  We respectfully submit that neither this omission, nor the deliberate choice to pursue a fraud claim based on personal statements rather than on an SEC filing, warrant the imposition of any sanctions on Marland or his counsel.

As the Court has noted, there is support for the exercise of subject matter jurisdiction claims by foreigners who purchased securities on American exchanges alleging foreign conduct that affected U.S. markets.  *Parmalat*, 376 F. Supp. at 511 n.194.  Marland's purchases were made in the United States, and the conduct was specifically focused on Marland's holdings of Big Sky stock, purchased in the U.S.  Big Sky then repeated a substantial portion of Heysel's statement in an 8-K.  Even apart from the omission of the 8-K from the Complaint, which was done for tactical reasons, such a theory of jurisdiction was not frivolous and does not merit sanctions on either Marland or his counsel.  The fact that any possible jurisdictional defect can be cured by amendment referring to the 8-K, which reflected and continued Heysel's false statements to Marland's associate, confirms that sanctions are inappropriate here.

**CONCLUSION**

For the reasons set forth above, the Court should (i) reconsider its decision granting defendants' motion to dismiss; (ii) if necessary to establish jurisdiction, grant plaintiff leave to amend the complaint; and (iii) not levy any sanctions.


New York, New York
July 24, 2008

                HAYES & MALONEY LLP


                By: /s/ Andrew W. Hayes
                    Andrew W. Hayes (AH-2570)
                    1 Rockefeller Plaza, Suite 1005
                    New York, N.Y. 10020
                    212-554-3120

                    Attorneys for Plaintiff
                    FRANÇOIS MARLAND