PROSKAUER ROSE LLP
Lloyd B. Chinn (LBC-7953)
1585 Broadway
New York, NY 10036-8299
Telephone: 212.969.3000
Fax: 212.969.2900
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FRANÇOIS MARLAND                    :   08 Civ. 3751 (LAK) (DCF)
                                    :   **ECF CASE**
                    Plaintiff,      :
                                    :
    against                         :   **MEMORANDUM OF LAW IN**
                                    :   **SUPPORT OF DEFENDANTS'**
MATTHEW HEYSEL, and                 :   **MOTION TO DISMISS**
BIG SKY ENERGY CORPORATION,         :   **PURSUANT TO FED. R. CIV. P.**
                                    :   **12(B)(1) AND 12(B)(2)**
                    Defendants.     :
------------------------------------X

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), Defendants Matthew Heysel ("Heysel") and Big Sky Energy Corporation ("Big Sky"), by their counsel Proskauer Rose LLP and Ray Quinney & Nebeker P.C., hereby move this Court for an order dismissing Plaintiff's Amended Complaint (the "Amended Complaint") for lack of subject matter jurisdiction or, alternatively, to dismiss the Amended Complaint as against Matthew Heysel for lack of personal jurisdiction.

## PROCEDURAL HISTORY

This Court dismissed Plaintiff's original Complaint for lack of subject matter jurisdiction on July 10, 2008 (the "July 10 Opinion") (Mem. Op., July 10, 2008) and denied Plaintiff's Motion for Reconsideration on July 28, 2008 (Order, July 28, 2008). But the Court allowed Plaintiff "to amend in an effort to show a claim that falls within the federal securities laws." (*Id.*) Plaintiff filed an Amended Complaint and sought to add allegations to establish subject matter jurisdiction.

However, as explained below, even a cursory review of Plaintiff's Amended Complaint demonstrates that Plaintiff has failed to allege any facts that satisfy the requirements for subject matter jurisdiction. Like the preceding Complaint, the Amended Complaint should be dismissed for the reasons set forth herein and the July 10 Opinion.

## SUMMARY OF ARGUMENT

By way of review, Plaintiff François Marland (a French citizen who resides in Switzerland) brought this action alleging violations of the Securities Exchange Act, 15 U.S.C. 78, *et. seq.*, (the "Act") against Matthew Heysel (a Canadian citizen who resides in Dubai, United Arab Emirates) and Big Sky Energy Corporation (a Nevada corporation with no operations in the United States). Plaintiff alleged that he learned "inside" information about Big Sky during a *single* conversation in which Heysel participated that occurred in Dubai, United Arab Emirates, on June 11, 2006 (the "Dubai conversation"). Plaintiff did not actually participate in this conversation, but claimed that an individual named Piero Ventura (a foreign national) relayed to him what Heysel allegedly said. As a result of learning the substance of this conversation, Plaintiff claimed to have suffered damages because he decided not to sell his shares of Big Sky.

In his Amended Complaint, Plaintiff repeats these allegations and includes several new allegations; a close review shows that none of the new allegations have any bearing on his claim under the Act:

1. Plaintiff goes to great lengths to show that Big Sky shares have been purchased by *other* investors in the United States. (Am. Compl. ¶¶ 9-15.) *However, Plaintiff does not allege that any of these investors purchased or sold their shares because of any alleged misrepresentation by Defendants.*

2. Plaintiff alleges that Big Sky's filings with the Securities & Exchange Commission were prepared and made in the United States. (*Id.* ¶¶ 15, 16.) *However, Plaintiff does not allege (a) that any statement contained in Big Sky's filings contained any false statement, or (b) that any investor, including Plaintiff, actually relied upon those filings.*

3. Plaintiff *now* also claims that instead of merely holding his shares he "decided" to purchase additional shares some time after the alleged conversation that occurred in

2

>Dubai. (*Id.* ¶ 23.) *However, Plaintiff does not allege any specific date, dollar amount, or location of any such alleged purchases.*

A.    **Lack of Subject Matter Jurisdiction**

This Court set forth the test for subject matter jurisdiction under the Act in its July 10 Opinion:

>In *Bersch v. Drexel Firestone, Inc.,* Judge Friendly articulated the governing rule. The Test is "(1) whether the wrongful conduct occurred in the United States, and (2) whether the wrongful conduct had a substantial effect in the United States or upon United States citizens."

(Mem. Op. 6, July 10, 2008 (footnotes omitted).) Following this rule, this Court found that Plaintiff's original Complaint "affirmatively alleges that the allegedly wrongful conduct occurred in Dubai and that the injury complained of was sustained by a French citizen resident in Switzerland. There is no allegation that the alleged fraud had a substantial effect in the United States." *Id.* Therefore, this Court concluded, the original Complaint "satisfies neither the conduct nor the effects test." *Id.*

Plaintiff's Amended Complaint changes nothing. Plaintiff's allegations cannot satisfy either the "effects" or "conduct" tests for subject matter jurisdiction under the Act. Plaintiff has *still* not alleged any wrongful "conduct" that occurred in the United States. Plaintiff does not allege that any false statement was made in the United States or even submitted to a U.S. regulatory agency. The entirety of the alleged "wrongful conduct" remains a single conversation that allegedly occurred in Dubai. As such, Plaintiff cannot satisfy the "conduct" test.

With respect to "effects" test, Plaintiff initially attempts to support subject matter jurisdiction by reciting the number of Big Sky's U.S.-resident shareholders. But because Plaintiff does not allege that any other shareholder, let alone a U.S.-resident shareholder, knew of the Dubai conversation and relied on it to their detriment, the mere reference to U.S.-resident shareholders is insufficient support an inference of any "substantial" effect of the alleged fraud on U.S. investors or

markets. Plaintiff also claims, without specificity, that he purchased shares of Big Sky some time after the alleged Dubai conversation. However, Plaintiff, a non-U.S. resident, does not claim that any U.S. resident or U.S. exchange was impacted by his *single* alleged purchase. Big Sky's shares are not traded on any U.S. exchange and are merely quoted through the "Pink Sheets" (which is not a securities exchange). This simply fails the requirement for a "substantial" effect on U.S. investors or markets. The essence of Plaintiff's entire claim involves persons and activities that have no relationship to the United States. Under well-established Second Circuit case law, Plaintiff's Amended Complaint should be dismissed in its entirety under Rule 12(b)(1) of the Federal Rules of Civil Procedure because it alleges no "conduct" or "effects" that have any nexus to the United States.

### B. Lack of Personal Jurisdiction over Heysel

Alternatively, Plaintiff cannot establish that this Court can exercise personal jurisdiction over Heysel. Under the Act, personal jurisdiction is established over a person upon a showing of "minimum contacts" by the defendant with the United States. But, in this case, Heysel has no such contact with the United States. Heysel is a Canadian citizen who has, for all times relevant in this matter, resided in Dubai in the United Arab Emirates. Furthermore, Heysel has never been a citizen or resident of the United States. Lastly, none of the facts alleged by Plaintiff show any contact by Heysel with the United States that relate to any of Plaintiff's claims. As such, Plaintiff's claims against Heysel should be dismissed for lack of personal jurisdiction.

### ARGUMENT

Plaintiff François Marland brought this action alleging violations of the Securities Exchange Act against the Defendants by filing a Complaint. Defendants filed a Motion to Dismiss, which Plaintiff opposed. This Court, in a Memorandum Opinion dated July 10, 2008, granted Defendants' Motion to Dismiss and ordered Plaintiff and his attorney to show cause why they should not be sanctioned. Plaintiff responded by filing a Motion to Reconsider, Motion for Leave to Amend the

4

Complaint, and Response to Order to Show Cause. This Court denied the Motion to Reconsider, but allowed Plaintiff to amend the complaint (Order, July 10, 2008), which he subsequently did. Plaintiff's Amended Complaint invokes federal question jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934. Despite the addition of several new factual allegations, Plaintiff has again failed to establish that this Court has subject matter jurisdiction over the allegations made in the Amended Complaint or, alternatively, that the Court may exercise personal jurisdiction over Heysel. For these reasons, set forth in more detail below, Defendants ask this Court to dismiss the Amended Complaint.

### A.     Plaintiff's Amended Complaint Should Be Dismissed in Its Entirety for Lack of Subject Matter Jurisdiction

Plaintiff is required to prove subject matter jurisdiction by making a *prima facie* showing of jurisdiction in the allegations of the Amended Complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F. 3d 502, 507 (2d Cir. 1994). In that regard, courts will not draw any inferences in favor of the plaintiff in making that threshold jurisdictional showing. *Id.* This means that a plaintiff must "proffer the necessary factual predicate—not simply an allegation in a complaint—to support jurisdiction." *London v. Polishook*, 189 F.3d 196, 199 (2d Cir. 1999). Although he recites several new factual allegations in his Amended Complaint, Plaintiff again utterly fails to offer any factual basis for subject matter jurisdiction.

The Second Circuit has developed a substantial body of case law for "[t]he exercise of subject matter jurisdiction over the claims of foreign plaintiffs regarding conduct related to foreign securities transactions." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 367 (S.D.N.Y. 2005) (Marrero, J.). The *In re Alstom* court described these tests, noting that a court

> may consider the merits of these claims and apply the antifraud provisions of American securities laws if it finds evidence in the pleadings and other relevant motion papers demonstrating sufficient wrongful conduct within the United States, or substantial adverse effects on United States investors in or American markets for the securities at issue, relating to the foreign securities transactions

5

challenged by the foreign claimants.

*Id.* at 367-68.[1] To conduct this inquiry, the Second Circuit has outlined two separate jurisdictional tests: the "conduct test" and the "effects test." *See, e.g., S.E.C. v. Berger*, 322 F.3d 187, 192-93 (2d Cir. 2003).[2]

### 1. Plaintiff Cannot Satisfy the Conduct Test

In explaining the conduct test, the Second Circuit has held that "jurisdiction exists only when 'substantial acts in furtherance of the fraud were committed within the United States.'" *Id.* at 192 (quoting *Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1045 (2d Cir. 1983)). As such, "a federal court has subject matter jurisdiction if (1) the defendant's activities in the United States were more than 'merely preparatory' to a securities fraud conducted elsewhere, and (2) these activities or culpable failures to act within the United States 'directly caused' the claimed losses." *Itoba Ltd. v. LEP Group PLC*, 54 F.3d 118, 122 (2d Cir. 1995) (citations omitted). The conduct test is focused "on the nature of conduct in the United States as it relates to carrying out the alleged fraudulent scheme." *Psimenos*, 722 F.2d at 1045.

Judge Cote recently summarized case law within the Second Circuit by outlining the type of activity that would satisfy the conduct test as follows:

> Acts in the United States may be "merely preparatory" if they take the form of culpable nonfeasance and are relatively small in comparison to those abroad, are far removed from the consummation of the fraud, or where the bulk of the activity was performed in foreign countries. Conduct may be "more than merely preparatory," however, where the fraudulent scheme was masterminded and implemented by [the defendant] in the United States, conduct material to the completion of the fraud occurred in

---

[1] This careful inquiry is based upon Congress' goal to limit the use of "'the precious resources of United States courts' to a specific transnational securities fraud claim." *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 538 (S.D.N.Y. 2007) (Batts, J.) (quoting *Itoba Ltd. v. LEP Group PLC*, 54 F.3d 118, 121 (2d Cir. 1995)).

[2] "The conduct and effects tests do not have to be applied separately or distinctly. Rather, 'an admixture or combination of the two often gives a better picture of whether there is sufficient United States involvement to justify the exercise of jurisdiction by an American court.'" *E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 547 (S.D.N.Y 2006) (quoting *Itoba*, 54 F.3d at 122).

>the United States, where substantial acts in furtherance of the fraud were committed in the United States, where the culminating acts of the fraudulent scheme occurred in the United States, or where the U.S. conduct was an essential link in the fraud.

*In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 563 (S.D.N.Y. 2008) (Cote, J.) (alteration in original) (citations and internal quotation marks omitted); *see also In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024 at *10 (S.D.N.Y. Oct. 25, 2006) (Pauley, J.) (dismissing plaintiff's claims under the conduct test where "[a]ll of Defendants' alleged misstatements emanated from abroad").

In the present case, Plaintiff claims one act occurred in the United States: namely, Big Sky's SEC filings were drafted in the United States (Am. Compl.¶ 17). As detailed below, Plaintiff's allegations fail to confer subject matter jurisdiction under the "conduct" test.

Plaintiff claims that the fact that Big Sky's SEC filings were drafted in the United States is—alone—a sufficient basis for subject matter jurisdiction. But, significantly, Plaintiff does not allege that Big Sky's June 14, 2006 8-K filing contains false statements, nor does he allege that he relied on this filing in any way. Plaintiff states only that the filing "repeated the essence of Heysel's statements to Marland regarding the purported joint venture." (*Id.* ¶ 24.) Thus, the 8-K filing cannot be the direct cause of nor material in any way to Plaintiff's alleged losses. *See In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 541 (S.D.N.Y. 2007) (Batts, J.) (finding that "[t]he SEC filings, alone, are insufficient to trigger this Court's subject matter jurisdiction over Foreign Plaintiffs" where those plaintiffs did not allege that they relied on SEC filings when they purchased stock or that "those filings were a 'direct cause' of the harm that they suffered").[3]

For purposes of the conduct test, the preparation in the United States of SEC documents

---

[3] Even if Marland had asserted that the SEC filings contained false statements, that he relied on them, and that they were a direct cause of his claimed loss, "the act of filing documents with the SEC is insufficient standing alone to confer jurisdiction in an action for damages. Foreign investors may not bring private claims for damages in United States courts simply by alleging that false statements were made in SEC filings." *In re SCOR Holding (Switz.) Litig.*, 537 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (Cote, J.) (citation omitted).

upon which the Plaintiff did not rely is not sufficient to justify the exercise of subject matter jurisdiction over Plaintiff's claims. Rather, the essential act constituting the alleged fraud—the June 11, 2006 conversation between Heysel and Ventura—occurred overseas in a hotel in Dubai. No other conduct by Defendants occurred in the United States. As such, Plaintiff's allegations are insufficient to justify the exercise of subject matter jurisdiction.

2.   **Plaintiff Cannot Satisfy the Effects Test**

The "effects" test focuses on "the impact of overseas activity on U.S. investors and securities traded on U.S. securities exchanges." *Europe & Overseas Comm. Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 128 (2d Cir. 1998). "Under the effects test a federal court has subject matter jurisdiction if the defendant's conduct has had a 'substantial' impact in the United States." *Lobatto v. Berney*, 1999 WL 672994 at *3 (S.D.N.Y. Aug, 26, 1999) (Kram, J.). Thus, "subject matter jurisdiction is appropriate where there are alleged 'losses from sales of securities to Americans resident in the United States whether or not acts (or culpable failures to act) of material importance occurred in this country.'" *Id.* (quoting *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 993 (2d Cir. 1975)). Residence in the United States, not American nationality, is the focus of the test. *Banque Paribas,* 147 F.3d at 128 n.12.

Again, Plaintiff has failed to plead any facts that establish subject matter jurisdiction under the effects test. In his original Complaint, Plaintiff admitted that he is neither a U.S. citizen, nor a U.S. resident. (*See* Am. Compl. ¶ 3.) Plaintiff, a foreign national living in Geneva, Switzerland, also alleged only that a single overseas conversation (which occurred in Dubai), and to which he was not a party, caused him to retain his shares of Big Sky and suffer a loss. (*Id.* ¶¶ 20-23.) To remedy the gross deficiency of these allegations, Plaintiff alleges in his Amended Complaint that (1) some of Big Sky's shareholders are U.S. residents, (2) Plaintiff purchased Big Sky stock "through the Pink Sheets" (Am. Compl. ¶ 23), and (3) Plaintiff's purchase of Big Sky stock was "cleared" by a company with headquarters in the United States. None of these allegations, alone or in

8

combination, is sufficient to sustain subject matter jurisdiction.

First, while the number of U.S. resident shareholders can be relevant to a subject matter jurisdiction inquiry under the effects test, see, e.g., Itoba Ltd. v. Lep Group PLC, 54 F.3d 118, 124 (2d Cir. 1995) (considering under the effects test the fact that fifty percent of a company's shares were held in the United States where that company financed the stock purchase at issue and ultimately bore the relevant loss), the number of such shareholders of Big Sky stock is inapposite here. Plaintiff does not allege that any U.S. resident shareholders knew of the Dubai conversation, were deceived by it and purchased Big Sky stock as a consequence, or were harmed in any way. Thus, although U.S. residents own shares of Big Sky, Plaintiff reports no effect of the overseas conversation on those shareholders.[4] Cf. Banque Paribas, 147 F.3d at 128 n.14 (finding the extent of U.S. holdings of the security at issue irrelevant where the alleged misrepresentations were made by one individual to another individual and "were by no means the sort of public misrepresentations, such as concealment of a large liability or overstating earnings, that would implicate all U.S. holders of [the] shares").

Second, Plaintiff claims to have purchased shares of Big Sky stock after learning the substance of the Dubai conversation. These shares, Plaintiff asserts, "were purchased through the Pink Sheets." (Am. Compl. ¶ 23.) Tellingly, Plaintiff provides no other information regarding exactly where, when, and how he purchased these additional shares as required by Rule 9(b). See, e.g., London v. Polishook, 189 F.3d 196, 199 (2d Cir. 1999) (noting that a plaintiff must "proffer the necessary factual predicate—not simply an allegation in a complaint—to support jurisdiction").[5]

---

[4] Likewise, although Plaintiff does not actually allege that Big Sky's June 14, 2006 8-K filing contained any fraudulent statements, to the extent he infers such, he does not allege that U.S. resident shareholders of Big Sky stock were deceived by it or suffered losses because of it. Thus, Plaintiff cannot rely on Big Sky's SEC filings to establish subject matter jurisdiction under the effects test.

[5] In addition, Plaintiff has not attached any documentation to his Amended Complaint to support his allegation that this purchase actually occurred.

But assuming the trade did occur, as this Court must,[6] Plaintiff's allegation of a purchase "through the Pink Sheets" is facially insufficient to sustain subject matter jurisdiction in this Court. Significantly, Plaintiff, a non-U.S. resident, does not claim that any U.S. resident or U.S. exchange was impacted by his *single* alleged purchase. Indeed, Big Sky's shares are not traded on any U.S. exchange and are merely quoted through the "Pink Sheets" (which is not a securities exchange).[7] Pink OTC Markets Inc., headquartered in the United States, maintains the "Pink Sheets," an electronic quotation system for over-the-counter securities. Market makers and other brokers use the Pink Sheets to publish bids and ask quotation prices for securities listed on this system. One does not purchase securities "through" the Pink Sheets, but locates a willing seller (or buyer) through its listings. An actual purchase (or sale) of securities quoted on the Pink Sheets occurs elsewhere, and the Pink Sheets has no connection with a subsequent purchase (or sale) of such securities. Thus, Plaintiff's bare allegation that he purchased Big Sky stock "through the Pink Sheets" cannot support an exercise of subject matter jurisdiction because it fails the requirement that the conduct have a "substantial" effect on U.S. investors or markets.[8]

Plaintiff's claims therefore have no nexus to activity, investors, or markets within the United States. This is simply a case in which a non-U.S. resident is seeking to use U.S. courts and

---

[6] When reviewing a motion to dismiss, the court must "take the facts to be as stated in the plaintiff's amended complaint." *Psimeno v. E.F. Hutton & Co., Inc.s*, 722 F.2d 1041, 1043 (2d Cir. 1983).

[7] Plaintiff also claims that his purchase of shares of Big Sky stock was cleared by a company with headquarters in the United States. Importantly, Plaintiff does not affirmatively allege that the trade *actually* cleared in the United States, or otherwise had any "substantial" effect in the United States..

[8] Moreover, cases in which subject matter jurisdiction has been found based on trading on American markets have involved defendant-traders who, themselves, executed the subject trades. *See Psimenos*, 722 F.2d at 1043-44, 1046 (finding subject matter jurisdiction in suit for violations of Commodities Exchange Act filed by citizen and resident of Greece against Delaware corporation-commodities broker with principal place of business in New York in part because defendant-broker's "agents completed the alleged fraud by trading on domestic futures contracts on American commodities exchanges"); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 547 F. Supp. 309, 310, 315 (N.D. Ill. 1982) (finding subject matter jurisdiction under the conduct test in suit for violations of Commodities Exchange Act filed by citizens and residents of Lebanon against Lebanese corporation-brokerage because brokerage's transmittal of plaintiff's commodities orders from Beirut to Chicago "constitutes conduct within the United States" that "is substantial or significant when viewed in relation to its importance to the success of the alleged scheme to defraud"). Here, in contrast to these cases, neither Big Sky nor Heysel had any connection with the particulars of Plaintiff's actual trade.Defendants allegedly made statements that caused Plaintiff to purchase shares of Big Sky, but Defendants did not order the trade or execute the actual purchase.

resources to litigate an event that allegedly occurred in a foreign nation between foreign nationals. This case presents precisely the type of claim for which Congress did not want U.S. courts to waste their valuable resources because it has no meaningful connection to U.S. residents, investors, or markets. *See Bersch*, 519 F.2d at 985 ("When . . . a court is confronted with transactions that on any view are predominantly foreign, it must seek to determine whether Congress would have wished the precious resources of United States courts and law enforcements agencies to be devoted to them rather than leave the problem to foreign countries."); *E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 547 (S.D.N.Y. 2006) (Cote, J.) ("[C]ourts are reluctant to apply our securities laws to 'transactions that have only remote and indirect effects in the United States.'" (quoting *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir. 1989))). In sum, the Amended Complaint, like the original Complaint, is woefully deficient and fails to establish subject matter jurisdiction under the conduct and effects tests. Because Plaintiff cannot establish subject matter jurisdiction, the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure in its entirety.

    **B.**     <u>**Plaintiff's Amended Complaint Should Be Dismissed Against Heysel Because Heysel Is Not Subject to Personal Jurisdiction**</u>

When jurisdiction is premised on a statute, such as the Act, that provides for nationwide service of process, the court's inquiry focuses on the defendant's conduct within the entire United States, not just the forum state. *Herbstein v. Bruetman*, 768 F. Supp. 79, 81 (S.D.N.Y. 1991). But due process nevertheless requires that the defendant have minimum contacts with the United States to establish personal jurisdiction. *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995). The minimum contacts analysis examines whether "the exercise of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)). "For personal jurisdiction to comport with due process, (1) the defendant must

have 'minimum contacts' with the forum, and (2) the exercise of personal jurisdiction must be reasonable." *In re Astrazeneca Sec. Litig.,* 2008 WL 2332325 at *12 (S.D.N.Y. June 3, 2008) (Griesa, J.). There are two types of personal jurisdiction in the minimum contact analysis: "One is general jurisdiction, which exists if the defendant's contacts with the forum have been continuous and systematic." *Id.* Alternatively, a plaintiff may seek to establish "specific jurisdiction, which exists when a defendant has purposefully directed his activities toward the forum and the litigation arises out of or is related to the defendant's contact with the forum." *Id.*

The *Astrazeneca* case provides an illustrative analysis for the case before this Court. In *Astrazeneca*, the plaintiffs sought to name as defendants two individuals who served on the Board of Directors for the defendant Astrazeneca. *Id.* Both of the individual directors were foreign nationals who did not reside in the United States. *Id.* The plaintiffs alleged, however, that the individuals had traveled to the United States in the course of their duties as directors for Astrazeneca. *Id.* at *13. The plaintiffs also added several "conclusory" allegations that the individuals had participated in the fraud (which was allegedly related to one of Astrazeneca's drugs). *Id.* The court, however, found these allegations wholly insufficient to establish personal jurisdiction. *Id.* In conducing its analysis, the court noted that the complaint contained no allegations sufficient to support "general jurisdiction"—*i.e.* that the directors had "continuous and systematic" contact with the United States. *Id.* at *12. Accordingly, the court turned to whether "specific" jurisdiction could be asserted over the individuals. *Id.* at *13. In that regard, the court found that the individuals' travel to the United States as directors for Astrazeneca was not related to the specific "fraud" identified in the complaint. *Id.* Furthermore, the court noted that a person's mere status as a member of the board of directors "is not alone sufficient to establish jurisdiction." *Id.* The *Astrazeneca* court then noted that the plaintiffs failed to allege that the individuals engaged in any conduct *in the United States* related to the specific "fraud" identified in the complaint. *Id.* Accordingly, the court dismissed the claims against the individual directors for lack of personal

12

jurisdiction. *Id.*

In the present case, Plaintiff's allegations related to Heysel suffer from an even greater paucity of contacts with the United States. Although Plaintiff alleges that Heysel serves on the Board of Directors of Big Sky, Plaintiff has pled *no* facts that otherwise establish either general or specific jurisdiction over him. Plaintiff fails to allege facts that, if proven, would establish that Heysel has "continuous and systematic" contact with the United States. And, indeed, as demonstrated by his Declaration, Heysel has no significant contact with the United States. (*See* Heysel Dec. ¶¶ 2-5.) Furthermore, Plaintiff has not claimed that the alleged "fraud"—the conversation that occurred in Dubai—has any nexus to the United States or that Heysel engaged in contact with the United States as part of that alleged "fraud." Plaintiff makes no allegations that connect Heysel with the United States, or show activity by Heysel in the United States, related to the alleged "fraud." In sum, Plaintiff's Amended Complaint fails to allege that Heysel is subject to general or specific jurisdiction in the United States under the Act. Accordingly, Plaintiff's claims against Heysel should be dismissed for lack of personal jurisdiction.

## CONCLUSION

BASED ON THE FOREGOING, Defendants Big Sky Energy Corporation and Matthew Heysel respectfully request that this Court dismiss Plaintiff François Marland's Amended Complaint for lack of subject matter jurisdiction or, alternatively, dismiss all of the claims against Matthew Heysel for lack of personal jurisdiction.

Dated: New York, New York
       August 28, 2008

                        Respectfully submitted,

                        PROSKAUER ROSE LLP

                        By: /s/ Lloyd B. Chinn
                            Lloyd B. Chinn (LBC-7953)

                        1585 Broadway
                        New York, NY 10036-8299
                        212-969-3341


                        RAY QUINNEY & NEBEKER P.C.
                        Matthew N. Evans (phv)
                        Justin T. Toth (phv)
                        36 S. State Street, Suite 1400
                        Salt Lake City, Utah  84111
                        801-532-1500

                        Attorneys for Defendants
                        Matthew Heysel and
                        Big Sky Energy Corporation

## CERTIFICATE OF SERVICE

I, Lloyd B. Chinn, Esq., hereby certify that true and correct copies of Big Sky Energy Corporation Defendant's Notice of Motion to Dismiss, Memorandum of Law in Support of Motion to Dismiss, Declaration of Matthew Heysel, First Set of Interrogatories, First Request for the Production of Documents, and Notice of Deposition of Plaintiff were served this 28th day of August 2008, by HAND DELIVERY, upon:

>Andrew W. Hayes, Esq.
>1 Rockefeller Plaza, Suite 1005
>New York, New York  10020
>Attorneys for Plaintiff

_____
Lloyd B. Chinn (LBC-7953)